# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 22-569V
UNPUBLISHED

| | |
|---|---|
| Sonya F. Smith, *as Administrator of the Estate* of KATHY FRYE,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: October 9, 2025 |

*Chellis Garcia, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.*

*James Vincent Lopez, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On May 24, 2022, Kathy Frye[2] filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"), alleging that she suffered a Table injury – shoulder injury related to vaccine administration ("SIRVA") - as the result of an influenza ("flu") vaccine received on October 2, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Ms. Frye died of an unrelated cause on April 2, 2025, and Sonya F. Smith, Administrator of the Estate of Kathy Frye, was substituted as Petitioner in this claim. ECF No. 36.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons set forth below, and after holding an expedited hearing on the disputed issues, I find that Petitioner is entitled to compensation for Ms. Frye's SIRVA Table injury.

## I. Relevant Procedural History

This case was initiated in May 2022. On October 2, 2023, Respondent filed his Rule 4(c) Report contesting Petitioner's entitlement to compensation. ECF No. 23. In reaction Petitioner filed a Motion for Findings of Facts on November 2, 2023. ECF No. 24. Subsequently, I ordered Respondent to file a response to Petitioner's motion and address whether Petitioner has established a SIRVA Table claim. Non-PDF Order filed November 9, 2023. Respondent filed a response brief on December 18, 2023, and Petitioner filed a reply brief on January 2, 2024. ECF Nos. 26, 28.

The parties were subsequently notified that I would resolve this dispute via an expedited hearing, which took place on September 5, 2025. ECF No. 30. After considering the arguments of both sides and questioning the parties in regard to the disputed issue at the expedited hearing on September 5, 2025, I issued an oral ruling finding Petitioner entitled to compensation. This Ruling memorializes those findings/determinations.

## II. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be

accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

4

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Findings[5]

#### 1. Situs

A preliminary issue in this case is whether Ms. Frye received a vaccine in her left arm, as alleged. Respondent argues that Petitioner cannot establish that Ms. Frye's pain and reduced range of motion are limited to the shoulder in which she received her vaccination, because her vaccine administration records indicate in two locations that she received the flu vaccine in her right (uninjured) arm. Ex. 1 at 1-2.

Ms. Frye's treatment records consistently document that she reported left shoulder pain after her vaccination to her providers, and she received treatment only for her left shoulder. Ms. Frye was seen by her primary care provider 27 days after her vaccination on October 29, 2019, at which time she reported left arm pain "after receiving [a] flu injection." Ex. 3 at 21. In addition, Ms. Frye's first physical therapy record on December 10, 2019, explicitly states: "Patient is a pleasant 67-year-old female presenting to therapy with left shoulder pain which started when she received a *flu shot injection into her left arm.*" Ex. 5 at 32 (emphasis added).

Petitioner's allegation that Ms. Frye received her vaccination in her left shoulder is further supported by Ms. Frye's own declaration and that of her husband. Exs.11-12. Mr. Frye recalled that when Ms. Frye came home from the pharmacy on October 2, 2019, she told him that "she received a flu vaccine while she was at the pharmacy," and he "saw a band-aid on her left shoulder." Ex. 12. Finally, I observe that in this case there is no evidence that Ms. Frye complained of right shoulder pain, nor was there a significant delay in reporting her shoulder pain that might cause her statements to be questioned based on her memory of a more distant event. And there are no other evidentiary items supporting a right-side vaccination.

Thus, based on the totality of the evidence, I find that Petitioner has established that Ms. Frye received her October 2, 2019 vaccination in her left arm as alleged.

---

[5] I have fully reviewed and considered all medical records and the parties' filings and briefing in this matter, however for the purpose of brevity my factual findings do not summarize and/or address all medical records and other evidence, or each argument put forward by the parties.

5

### 2. Limited Range of Motion

The second disputed issue in this case is whether Ms. Frye manifested or exhibited limited range of motion in this case. 42 C.F.R. § 100.3(c)(10)(iii) (requiring that a vaccine recipient manifest "(iii) Pain *and reduced range of motion* . . . limited *to* the shoulder in which the intramuscular vaccine was administered; . . . .") (emphasis added).

I have previously concluded that a petitioner must affirmatively establish that he suffered limited range of motion following vaccination to satisfy this QAI element. *Bolick v. Sec'y of Health & Hum. Servs.*, No. 20-893V, 2023 WL 8187307, at *6-8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023). I have also found that demonstrating pain and discomfort with motion are not the equivalent to demonstrating limited range of motion, and that diagnoses such as bursitis and impingement syndrome (even if symptoms of bursitis generally include limited motion) do not satisfy this table requirement. *Id.*, at *8-9. But unlike the requirement that a Petitioner must demonstrate pain within 48 hours of vaccination, there is no requirement that a Petitioner manifest reduced range of motion within a particular timeframe. *Id.*, at *7 (citing *Robuck v. Sec'y of Health & Hum. Servs.*, No. 20-0465V, 2023 WL 6214986, at *6 (Fed. Cl. Spec. Mstr. Aug. 21, 2023).

Respondent argues that Petitioner failed to establish that Ms. Frye had limited range of motion in her shoulder following her vaccination until after her shoulder surgery on September 11, 2020.[6] ECF No. 23 at 7.

Preliminarily, I observe that Ms. Frye's pre-surgery medical records and examinations appear to generally fail to *explicitly* state that she had "full" or "normal" range of motion, although they equally do not explicitly establish range of motion limits. *See, e.g.,* Ex. 3 at 21-22 (October 29, 2019 visit record stating "[l]eft shoulder sore after flu shot done 10/2, muscle not sore, but joint painful. Hard to rotate, cannot sleep on it and pain while sleeping at night." And further documenting "Musculoskeletal [Exam]: normal gait; left shoulder pain on rotation int[erior] [and] ext[erior], pain with abduction above 90 passive."); Ex. 5 at 7 (Ms. Frye's first orthopedic appointment on November 20, 2019 stating "[o]n exam of the left shoulder, she is having pain with active range of motion. She can forward flex up to about 160 degrees with stiffness and pain, abduct to about 150 to 160 degrees with stiffness and pain."); Ex. 5 at 18 (January 20, 2020 orthopedic appointment stating "[o]n exam of her left shoulder, she has got good forward flex[ion], abduction, and internal rotation with some mild difficulty. She has mild Hawkins and mild impingement.).

---

[6] Respondent acknowledges that Ms. Frye suffered limited range of motion subsequent to her shoulder surgery. However, it is unnecessary in this case to resolve whether a petitioner's reduced range of motion demonstrated subsequent to her shoulder surgery, and likely *at least* partially a function of the surgery itself, would satisfy the third QAI criteria.

At least one medical record, however, supports the conclusion that Ms. Frye manifested limited range of motion after vaccination – but also before her surgery. A close review of the record associated with Ms. Frye's first orthopedic visit on November 20, 2019, demonstrates that she manifested limited abduction and flexion on examination. During that examination, Ms. Frye was able to "forward flex up to about 160 degrees with stiffness and pain, [and] abduct to about 150 to 160 degrees with stiffness and pain." Ex. 5 at 7. Normal shoulder range of motion for adults ranges from 165 to 180 degrees in flexion, 170 to 180 degrees in abduction, 90 to 100 degrees in external rotation, and 70 to 90 degrees in internal rotation. CYNTHIA C. NORKIN & D. JOYCE WHITE, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80, 84, 88 (F. A. Davis Co., 5th ed. 2016); *Stamm v. Sec'y of Health & Hum. Servs.*, No. 20-1590V, 2024 WL 4678224, at *5 (Fed. Cl. Spec. Mstr. Oct. 1, 2024) (applying normal range of motion measurements in another SIRVA claim as described in the text above).

Additionally, Ms. Frye's left shoulder exam findings on November 20, 2019, can be contrasted with her right arm findings from the same visit, stating that "[o]n exam of the right shoulder, *full* forward flexion, abduction, and internal rotation," underscoring that Ms. Frye did *not* exhibit full range of motion in her left shoulder. Ex. 5 at 7 (emphasis added). Moreover, on December 10, 2019, Ms. Frye was seen for an initial PT evaluation, at which one of her long term goal was determined to be "*[r]estore* L[eft] shoulder AROM to [] WNL [or within normal limits]." *Id*. (emphasis added).

Accordingly, while I acknowledge Ms. Frye's left shoulder range of motion limitations appear to have been minimal, Petitioner has preponderantly demonstrated that Ms. Frye manifested *some* reduced or limited range of motion after her October 2019 vaccination.[7]

III.   **Other Requirements for Entitlement**

Petitioner has established all other requirements for a Table SIRVA claim, the remainder of which are not contested herein. 42 C.F.R. § 100.3(c)(10). There is no history of shoulder pain, inflammation, or dysfunction that would explain the post-vaccination injury. 42 C.F.R. § 100.3(c)(10)(i). Petitioner suffered the onset of her injury within 48 hours of her vaccination. 42 C.F.R. § 100.3(c)(10)(ii). And there is not preponderant evidence of another condition that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(iv). However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant

---

[7] I acknowledge Respondent's argument at the expedited hearing in this case that different sources attribute varying measurements as normal range of motion, but find the totality of the above evidence sufficient to establish that Petitioner has demonstrated that Ms. Frye manifested reduced range of motion. Further, as I discussed at the expedited hearing, the Vaccine Injury Table fails to define or provide any measurement for what constitutes limited or reduced range of motion in a SIRVA claim.

evidence of the additional requirements of Section 11(c), *i.e.,* receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established as discussed herein or undisputed in this claim. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A Damages Order will issue.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master